Filed 4/16/13  Hartzog v. Smolens CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| TODD HARTZOG et al., | |
| Plaintiffs and Appellants, | G046506 |
| v. | (Super. Ct. No. 30-2010-00433851) |
| DAVID SCOTT SMOLENS et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Orange County, David R. Chaffee, Judge.  Affirmed.

Law Offices of Mark D. Holmes and Mark D. Holmes for Plaintiffs and Appellants.

Bremer, Whyte, Brown & O'Meara, Keith G. Bremer and Rachel A. Mihai for Defendants and Respondents.

\*          \*          \*

INTRODUCTION

Todd Hartzog and Stacy Hartzog (the Hartzogs) purchased a house from Thomas Beadel and James Quandt. The Hartzogs contend Beadel and Quandt misrepresented and failed to disclose facts regarding the condition of the house. The Hartzogs further contend they would not have purchased the house if Beadel and Quandt had provided them with the true facts regarding the house.

David Scott Smolens and In One Construction, Inc., doing business as All In One Construction, are licensed contractors. (David Scott Smolens and In One Construction, Inc., will be referred to herein as Smolens.) Smolens performed work on the house before Beadel and Quandt sold it to the Hartzogs. The Hartzogs sued Smolens for fraud, among other things. Smolens filed a motion for summary judgment. The court granted the motion and entered judgment in favor of Smolens and against the Hartzogs; the Hartzogs appeal.

Smolens successfully made a prima facie showing for judgment in his favor. He thereby shifted the burden to the Hartzogs to demonstrate the existence of a triable issue of material fact. The Hartzogs failed to do so; therefore, we affirm the judgment in favor of Smolens.


STATEMENT OF FACTS AND PROCEDURAL HISTORY

Beadel and Quandt purchased a house located on Via Gallo in Coto de Caza (the property) at a foreclosure sale before January 2009. Shortly thereafter, Beadel and Quandt hired Smolens to perform work at the property. Beadel and Quandt asked Smolens to repair damage caused by water, dry rot, and pests, and told Smolens what parts of the property to work on.

In March 2009, the Hartzogs purchased the property from Beadel and Quandt. Smolens was not a party to the purchase transaction. Before completing the transaction, the Hartzogs hired a home inspector to inspect the property; neither the

2

inspector nor the Hartzogs' real estate broker communicated with Smolens. In a written form, Beadel and Quandt made disclosures to the Hartzogs of "known material facts and defects affecting the Property." (Some capitalization omitted.)

In 2010, the Hartzogs experienced water intrusion on the property, and learned that Beadel and Quandt had allegedly failed to disclose certain defects in the property.

In December 2010, the Hartzogs filed a complaint against Smolens, among others. In March 2011, the Hartzogs filed a second amended complaint. The second amended complaint asserted causes of action against Smolens for negligence, fraud, and violation of Business and Professions Code section 17200 et seq. Smolens moved for summary judgment or, in the alternative, summary adjudication of the issues. The Hartzogs filed opposition to the motion. After a hearing, the trial court granted the motion for summary judgment. The Hartzogs appealed.

DISCUSSION

I. *APPEALABILITY*

The clerk's transcript does not include a judgment. An order granting a summary judgment motion is not an appealable order. (*Sullivan v. Delta Air Lines, Inc.* (1997) 15 Cal.4th 288, 307, fn. 10.) However, the order of dismissal, signed by the trial court judge, meets the criteria of an order of dismissal under Code of Civil Procedure section 581d, and therefore constitutes a judgment for all purposes.

II. *STANDARD OF REVIEW*

"[T]he party moving for summary judgment bears the burden of persuasion" that there are no triable issues of material fact and that the moving party is entitled to judgment as a matter of law. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.) The moving party also "bears an initial burden of production to make

3

a prima facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact." (*Ibid*.) "A prima facie showing is one that is sufficient to support the position of the party in question." (*Id.* at p. 851.)

"A trial court properly grants summary judgment where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law. [Citation.] We review the trial court's decision de novo, considering all of the evidence the parties offered in connection with the motion (except that which the court properly excluded) and the uncontradicted inferences the evidence reasonably supports. [Citation.] In the trial court, once a moving defendant has 'shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established,' the burden shifts to the plaintiff to show the existence of a triable issue; to meet that burden, the plaintiff 'may not rely upon the mere allegations or denials of its pleadings . . . but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to that cause of action . . . .' [Citations.]" (*Merrill v. Navegar, Inc*. (2001) 26 Cal.4th 465, 476-477.)

III. *EVIDENTIARY OBJECTIONS*

Smolens filed evidentiary objections to significant portions of the declarations of Todd Hartzog and William Sterling, which were filed in opposition to the summary judgment motion. The trial court disregarded the objections because they failed to quote or set forth the objectionable statement or material, which is required by California Rules of Court, rule 3.1354(b)(3). (Additionally, Smolens failed to submit a proposed order in the form set forth in rule 3.1354(c).) The trial court did not sustain or overrule the objections; it simply disregarded them.

4

On appeal, Smolens states, "it was not reasonable for the trial court to say that [Smolens] had to retype 50 pages of inadmissible declaration statements in their objections." What is truly unreasonable is Smolens's failure to follow the clear requirements of the rules of court, thereby placing on the trial court the burden of parsing through the lengthy declarations to determine the material or statements to which objections were made.

When the trial court "fails to rule expressly on specific evidentiary objections," they are preserved on appeal. (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 534.) We will address the evidentiary issues as they are relevant to this appeal.[1]

## IV. *FRAUD*

"The elements of fraud, which give rise to the tort action for deceit, are (1) a misrepresentation, (2) with knowledge of its falsity, (3) with the intent to induce another's reliance on the misrepresentation, (4) justifiable reliance, and (5) resulting damage." (*Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1255.) When a fraud claim is based on concealment, rather than a direct misrepresentation of fact, the plaintiff must prove the following: "'"(1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage." [Citations.]' [Citation.] 'A duty to speak may

---

[1] This case does not present issues of the trial court overruling well-taken objections, or improperly sustaining objections that were not well taken, and what effect our de novo standard of review would have on our ability to independently review the admissibility of any or all evidence presented in support of or in opposition to a motion for summary judgment.

arise in four ways:  it may be directly imposed by statute or other prescriptive law; it may be voluntarily assumed by contractual undertaking; it may arise as an incident of a relationship between the defendant and the plaintiff; and it may arise as a result of other conduct by the defendant that makes it wrongful for him to remain silent.'  [Citation.]"  (*SCC Acquisitions, Inc. v. Central Pacific Bank* (2012) 207 Cal.App.4th 859, 864.)

In the motion for summary judgment, Smolens established that he (1) made no misrepresentations to Beadel and Quandt; (2) never met, much less communicated with, the Hartzogs before the Hartzogs purchased the property; (3) was never hired by and never performed any work for the Hartzogs; and (4) was only a contractor for Beadel and Quandt.  This evidentiary showing made out a prima facie case, and shifted the burden to the Hartzogs to establish through admissible evidence the existence of a triable issue of material fact.

In opposition to the summary judgment motion, the Hartzogs essentially conceded they could not assert a claim against Smolens for making a misrepresentation directly to them or for fraudulently concealing material information from them.  They argued, however, that Smolens was nevertheless liable for fraud under an indirect deception theory or under an aiding and abetting theory.[2]

A.  *Indirect Deception*

"It is true that in order for a defendant to be liable for fraud, he or she must intend that a particular representation (or concealment) be relied upon by a specific person or persons.  [Citation.]  However, it is also established that a defendant cannot escape liability if he or she makes a representation to one person while intending or

_____

[2]  In the trial court, the Hartzogs also argued Smolens was liable under a conspiracy theory.  On appeal, the Hartzogs are not contesting the trial court's ruling that they failed to offer any evidence that Smolens conspired with Beadel and Quandt to defraud the Hartzogs.

6

having reason to expect that it will be repeated to and acted upon by the plaintiff (or someone in the class of persons of which plaintiff is a member). [Citations.] [¶] This is the principle of indirect deception described in section 533 of the Restatement Second of Torts (section 533): 'The maker of a fraudulent misrepresentation is subject to liability for pecuniary loss to another who acts in justifiable reliance upon it if the misrepresentation, although not made directly to the other, is made to a third person and the maker intends or has reason to expect that its terms will be repeated or its substance communicated to the other, and that it will influence his conduct in the transaction or type of transaction involved.' Comment d to section 533 makes it clear the rule of section 533 applies where the maker of the misrepresentation has information that gives him special reason to expect that the information will be communicated to others and will influence their conduct. Comment g goes on to explain that it is not necessary that the maker of the misrepresentation have the particular person in mind. It is enough that it is intended to be repeated to a particular class of persons." (*Shapiro v. Sutherland* (1998) 64 Cal.App.4th 1534, 1548.)

The first question we must address is whether the theory of indirect deception was pled in the Hartzogs' second amended complaint. The trial court concluded, "the indirect deception theory is a departure from the theories advanced in the [second amended complaint]." We agree. The second amended complaint does not allege Smolens made any false representations to, or fraudulently concealed any material information Smolens had a duty to disclose from, Beadel and Quandt, with the intent that such misrepresentations or nondisclosures would be passed on to the Hartzogs and others in the class of potential buyers of the property. To the contrary, the second amended complaint alleges Smolens fully informed Beadel and Quandt about the property's substantial defects and the cost to repair those defects. It further alleges Smolens specifically agreed with Beadel and Quandt that Smolens would only take "minimal measures to stabilize the Property's structure—and not repair or remediate any of the

7

major defects and conditions that existed at the Property, or in the Property's structure," and that major defects would be covered up. It does not allege that Smolens made any misrepresentations to Beadel and Quandt, with the intention or reason to expect those misrepresentations would be repeated, or their substance communicated, to the Hartzogs. (Rest.2d Torts, § 533.)

Even if this theory had been pled in the second amended complaint, we would still find it was inapplicable as a matter of law. The theory of indirect deception, as set forth in section 533 of the Restatement Second of Torts, applies "if the misrepresentation, although not made directly to the other, is made to a third person and the maker intends or has reason to expect that its terms will be repeated or its substance communicated to the other, and that it will influence his conduct in the transaction or type of transaction involved." (Rest.2d Torts, § 533.)

Smolens offered admissible evidence, through his declaration, that he never made any misrepresentations to Beadel and Quandt: "I and All in One Construction have never made any misrepresentation to the Prior Owners regarding the Property." This evidentiary showing, although thin, was sufficient to shift the burden to the Hartzogs. The Hartzogs' opposition to the motion for summary judgment failed to create a triable issue of material fact as to whether Smolens ever made a misrepresentation to Beadel and Quandt. The Hartzogs' opposition to Smolens's statement of undisputed material facts states, in relevant part: "Moving Parties misrepresented the condition of the Property and its defects and conditions to Prior Owners in their Invoices ('AIO Invoices'); and also concealed from the Prior Owners defects and conditions, namely, that the entire structure was subsiding, and would continue to subside; that there was a 'negative grade' or 'faulty grade' problem that had caused water intrusion over a long period of time and if not remedied, would continue to cause damage to the Property's structure; that the foundation was damaged due to water intrusion, and would continue to sustain damage if not remedied."

8

The evidence to which the Hartzogs cite, however, does not support that statement; to the contrary, it supports Smolens's claim that he never made any misrepresentations to Beadel and Quandt. The declaration of Todd Hartzog states, "according to the AIO Invoices, *Smolens, Beadel and Quandt agreed* to only replace *some* of the rotten and damaged support beams, and do nothing about the subsiding structure, faulty grade, cracked foundation, the water intrusion, support beams that were below grade and still rotting and deteriorated, and the major work that would have to be done to remedy the rotten support beams, faulty grade, water intrusion, pests and drainage problems." (First italics added.) Todd Hartzog cited to a single invoice that lists multiple items of work performed by Smolens at the property, but does not contain any alleged misrepresentations by Smolens to Beadel and Quandt. The Hartzogs also cited the declaration of their contracting expert witness on construction, who declared, in relevant part, as follows:

" . . . As evidenced by Smolens' Invoices and his deposition testimony, at the time Smolens opened up the kitchen flooring and sub-flooring in January of 2009, *Smolens, Beadel and Quandt all saw and became aware of some of the serious defects and conditions in the Property* and the Property's structure that would cost hundreds of thousands of dollars to remedy; and based on the AIO Invoices and the physical evidence beneath the kitchen flooring and sub-flooring *it is clear that Quandt, Beadel and Smolens agreed to only replace some of the rotten and damaged support beams* under the flooring and sub-flooring—essentially to keep structure from continuing to subside and to prevent it from collapsing—*and do nothing about the rest of the support beams* that were still rotting and deteriorated. . . .

" . . . Specifically, as evidenced by Smolens' Invoices and his deposition testimony, *Beadel, Quandt and Smolens agreed that Smolens would conceal or 'cover up' the rotting and deteriorating support beams* (mudsill (mud plate) joists and posts)— and then 'put lipstick on the pig'—put flooring and subflooring over the rotting and

9

deteriorated support beams—*and make the observable portions of the rest of the Property as attractive as possible so that Beadel and Quandt could 'flip' the Property* by selling it to unsuspecting purchasers such as the Hartzogs. [¶] . . . [¶]

" . . . The fraudulent intent of AIO and Smolens in concealing the problems at the Property is inferred by the fact AIO and Smolens did in fact cover up major and existing problems with the Property that would have cost hundreds of thousands of dollars to remedy . . . and made the Property appear superficially attractive—'put lipstick on the pig'—all so that Beadel and Quandt could quickly 'flip' or sell it to unsuspecting buyers such as the Hartzogs. . . .

" . . . Smolens, a B1 contractor with years of experience, knew as soon as he looked below the kitchen floorboards and sub-flooring that the foundation was damaged and the structure's support beams and mudsill were water-stained, mildewed and rotting and, therefore, that all of the support beams and the mudsill (or mud plate) needed to be replaced. . . .

" . . . Indeed, *the physical evidence under the kitchen floorboards demonstrates a clear agreement by Beadel, Quandt and Smolens to perform only minimal repairs to keep the Property's structure from falling apart*—and they and Smolens then 'put lipstick on the pig'—to make the Property as superficially attractive to unsuspecting purchasers such as the Hartzogs. . . .

" . . . The half measures that Smolens took with respect to the foundation and support beams allowed water intrusion to continue, so that both the new and old support beams, posts and mudsill would continue to rot; and the subareas beneath the floorboards would continue to provide an environment ripe for mold, fungus, mildew, rot, wood destroying pests and rodents.

" . . . Beadel and Quandt also represented that they were not aware of any 'Water intrusion in any part or any physical structure on the Property . . . standing water, drainage, flooding, underground water moisture . . . on or affecting the Property.' . . .

10

" . . . This representation was false, as *Beadel and Quandt had to be aware of at least some water intrusion on the Property's support beams, at the very least, because they agreed that Smolens had to replace at least some of the support beams because the beams were rotten*—at least in part from being exposed to water. . . .

" . . . Beadel and Quandt also represented that they were not aware of any 'problems with or infestation of mold, mildew, fungus or spores, past or present, on or affecting the Property.' . . .

" . . . This representation was also false, as *Beadel and Quandt had to be aware of the major problems with mold, mildew and fungus*—both past and present—that affected the Property.

" . . . In short, *Beadel and Quandt had to know from directing Smolens to replace some of the joists and posts in the subareas that 'some' of the joists and posts underneath the kitchen floor were deteriorating and rotten* as a result of water intrusion, black mold and black stains on them, they had to be fully aware that the under portion of the Property was an environment that harbored such mildew and mold. . . .

" . . . Beadel and Quandt also represented that they 'fortified the structural integrity of the home.' However, this was false. *They only had Smolens replace some of the support beams that supported the Property's structure to keep the Property's structure from collapsing; and had decided not to replace several major support beams, opting instead to leave them rotting and decaying.* . . .

" . . . Consequently, *Beadel and Quandt had to know about at least some of the major defects and conditions in the Property and its structure; and did not disclose any of these* [*defects*] *and conditions in order to sell the Property quickly (flip it)* to an unsuspecting purchaser such as the Hartzogs. [¶] . . . [¶]

" . . . [E]ven the Invoices represent only that damaged, rotted and deteriorating portions of the Property's structure were being repaired—and there is no

11

mention whatsoever that damaged support beams were left in place; or that substantial defects and conditions still existed after Smolens finished the work.

" . . . AIO and Smolens claim that Smolens was just a contractor who did work for Beadel and Quandt at the Property. Although Smolens himself did not sell the Property to the Hartzogs, *Smolens knowingly did wrong—he used his construction expertise to take systematic measures to conceal the true condition of the Property and 'put lipstick on the pig'—make it look attractive so that Beadel and Quandt could quickly sell the Property to an unsuspecting subsequent buyer*, such as the Hartzogs. [¶] . . . [¶]

" . . . Smolens clearly, systematically and intentionally just 'put lipstick on the pig'—covered up major defects and conditions in the Property and made the Property look attractive—and knew that because Beadel and Quandt were going to re-sell the Property, they would not disclose the conditions that Smolens had concealed from Beadel and Quandt—and thereby defraud potential purchasers, such as the Hartzogs. . . .

" . . . As just one example, Smolens represented to Beadel and Quandt in his Invoices that Smolens had 'removed five existing bad floor joists and one rim joist in the kitchen . . . ; replaced floor joists and rim joist in kitchen . . . ; removed and replaced one kingpost in the kitchen . . . .' . . .

" . . . However, nowhere in any of the Invoices did Smolens mention (1) a faulty grade condition (2) obvious drainage or water intrusion problems (3) the foundation was cracked, (4) all of the support beams (joists, mudsill and posts) were so rotten that the Property's structure has subsided, and was continuing to subside; or (5) all of the support beams (joists, mudsill and posts) were so rotten . . . .

" . . . In addition, at his deposition, Smolens denied that he made any recommendations to Beadel or Quandt regarding what work should be performed on the Property. Smolens insisted they always told him what to do. . . .

" . . . The foregoing is important. Because if the conditions that existed under the kitchen floor when Smolens opened it up were not obvious to Beadel and

12

Quandt, they were obvious to Smolens—any competent licensed contractor had to know as soon as the contractor saw these conditions that these conditions were present; had been present for a very long time and had caused substantial damage to the Property's structure; and if these conditions were not remedied, the conditions would continue[] to cause substantial damage to the Property's structure.

" . . . Consequently, it is clear from the Invoices and Smolens' own deposition testimony that Smolens concealed at least some of the substantial defects and conditions in the Property and its structure from Beadel and Quandt.

" . . . As a result of Smolens concealing at least some defects and conditions from Beadel and Quandt, Beadel and Quandt falsely represented to the Hartzogs that the 'Property was extensively remodeled;' they had 'fortified the structural integrity of the home;' they were not aware of any 'Water intrusion in any part or any physical structure on the Property . . . standing water, drainage, flooding, underground water moisture . . . on or affecting the Property;' they were not aware of any 'problems with or infestation of mold, mildew, fungus or spores, past or present, on or affecting the Property;' they had 'corrected a number of drainage issues and virtually updated every aspect of the home.'

" . . . As the Invoices make clear, *Smolens did not say anything in the Invoices to Beadel and Quandt about the Property having (1) a faulty grade condition (2) drainage or water intrusion problems (3) a cracked foundation, (4) rotting and pest-ridden support beams (joists, mudsill and posts); (5) a structure that had subsided, and was continuing to subside. . . .*

" . . . Smolens could have avoided the Hartzogs' claim for indirect deception based on concealment by simply writing a letter or email to the Prior Owners detailing the defects and conditions he saw—and recommending that they repair all of the defects and conditions . . . —not just the few that Prior Owners directed him to perform. This is what construction contractors—licensed experts in the repair of people's homes—

13

do all of the time in such circumstances." (Fn., boldface & some italics omitted; italics added.)

Not only does Sterling's declaration fail to show evidence of any misrepresentation by Smolens to Beadel and Quandt, but it shows to the contrary that Beadel and Quandt were fully informed of everything Smolens was aware of, and that they collectively agreed to proceed with making minor repairs to the property while ignoring larger issues. This is completely inconsistent with the inference the Hartzogs attempted to draw, that Smolens misrepresented facts to Beadel and Quandt, which misrepresentations were then passed on to the Hartzogs by Beadel and Quandt, and that Smolens concealed facts from Beadel and Quandt.

Even if the Hartzogs' evidence raised a triable issue as to whether Smolens concealed a material fact from Beadel and Quandt, we would conclude Smolens would not be liable under the indirect deception theory of fraud. First, the doctrine has never been applied in such a way. The Hartzogs argue that "California courts have also recognized claims for indirect non-disclosure of material facts made by a defendant to [a] second person when the defendant knows or has reason to expect that these material facts will not be disclosed to another and a third person or class of persons, who will . . . act on the non-disclosure to his or her injury."

In all of the cases cited by the Hartzogs, however, the defendant made a false representation of fact, and the nondisclosure was of the true facts. (*Shapiro v. Sutherland*, *supra*, 64 Cal.App.4th at pp. 1539-1540 [in real property disclosure form, home sellers responded in the negative when asked if they were aware of noise problems in the neighborhood, but concealed true fact that next-door neighbors had loud arguments and late night parties]; *Geernaert v. Mitchell* (1995) 31 Cal.App.4th 601, 604 [home seller made false representations of fact that house foundation had no problems and all modifications to the house were done to code, but concealed true facts which were to the contrary]; *Barnhouse v. City of Pinole* (1982) 133 Cal.App.3d 171, 178 [property

14

developer represented to home buyers that houses were built on fill, but concealed fact that fill had not been done properly, and land also had preexisting slides and springs]; *Granberg v. Turnham* (1958) 166 Cal.App.2d 390, 392-393 [listing agreement falsely represented property was in a single zoning area, rather than covering two separate zoning areas; real estate broker's agent did not reveal true facts to multiple listing service, which promulgated the misrepresentation to the public]; *Wice v. Schilling* (1954) 124 Cal.App.2d 735, 737-739 [written representation submitted to escrow that property was free from termites and fungi, without divulging full contents of 14-page report documenting locations and extent of termite infestation and fungi]; *Crystal Pier Amusement Co. v. Cannan* (1933) 219 Cal. 184, 185-186 [representation that pier would be built using certain materials, without disclosing it was actually built with inferior materials, making it unsafe; indirect deception theory not at issue because court concluded representations were made to individuals who were directors or officers of both the company that originally hired contractor and the company that bought the rights to build on the pier].)[3]

---

[3] One case cited by the Hartzogs, *Massei v. Lettunich* (1967) 248 Cal.App.2d 68, does not involve a direct misrepresentation, but is distinguishable from the present case on its facts. A landowner hired a contractor to grade and fill his land, but rejected the contractor's recommendation that the fill be compacted. (*Id.* at pp. 70-71.) An engineering firm hired by the landowner recommended the foundations for the homes to be built on the site be extended one foot into the ground. (*Id.* at p. 71.) The landowner then hired a company (Trent & Son) to construct the homes, but did not reveal the land had been filled, or the existence of the report recommending the sunken foundations. (*Ibid.*) Trent & Son bought the lots from the landowner, giving notes that would not become due until the homes were built and then sold. (*Ibid.*) The buyers of the homes that were ultimately built sued when the land under their homes began subsiding. (*Ibid.*) In concluding the homeowners could sue the original landowner for fraudulent nondisclosure, the appellate court held as follows: "'The law is well settled that "representations made to one person with intention that they will be repeated to another and acted upon by him and which are repeated and acted upon to his injury gives the person so acting the same right to relief as if the representations had been made to him directly."' [Citations.] No reason appears why this same rule should not be applicable to nondisclosures as well as misrepresentations. The jury could easily have found that [the

15

B. *Aiding and Abetting*

The Hartzogs also argue they created a triable issue of material fact as to whether Smolens aided and abetted the fraud by Beadel and Quandt. "'"'Liability may . . . be imposed on one who aids and abets the commission of an intentional tort if the person (a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person." [Citations.]' [Citation.]" (*Casey v. U.S. Bank Nat. Assn.* (2005) 127 Cal.App.4th 1138, 1144.) The Hartzogs do not contend Smolens owed them any duties that could have been breached; therefore, we analyze the issue solely as to whether Smolens knew Beadel and Quandt's conduct breached a duty, and whether Smolens gave substantial assistance or encouragement to Beadel and Quandt in doing so.

The trial court initially found the Hartzogs had failed to allege a cause of action for aiding and abetting a fraud by Beadel and Quandt, but nevertheless proceeded to consider whether the Hartzogs had proffered evidence to create a triable issue of material fact. The opposition to the motion for summary judgment did state that if the court did not believe the Hartzogs had pled a cause of action for aiding and abetting a fraud by Beadel and Quandt, the Hartzogs requested that the court grant leave to amend the complaint. Because the Hartzogs did timely request leave to amend, we will move beyond the initial question whether aiding and abetting was alleged in the second

---

original landowner], in failing to disclose to the Trents that the lots had been filled, did so because he was fearful that the prospective purchasers would in turn learn that fact and be dissuaded. [The original landowner], of course, had a pecuniary interest at stake because it was agreed that the Trents' notes as payment for the lots would not be due and he would not be paid until the residences were sold." (*Id.* at p. 73.)

16

amended complaint, and proceed to a determination whether an aiding and abetting theory can withstand summary judgment.

The problem with the aiding and abetting theory is that the Hartzogs did not offer any evidence that Smolens knew Beadel and Quandt would perpetrate a fraud on the Hartzogs. Smolens therefore cannot be liable for aiding and abetting any fraud. The Hartzogs offered evidence that Smolens knew Beadel and Quandt intended to resell the property. In his deposition, Smolens testified as follows:

"BY [the Hartzogs' counsel]:

"Q And did they ever indicate to you that they wanted to res[ell] the property?

"A Yes.

"Q And did they have a particular time frame in mind for reselling the property? [¶] . . . [¶]

"THE WITNESS: Not conveyed to me, no.

"BY [the Hartzogs' counsel]:

"Q Did they ever tell you that they wanted to sell the property as soon as possible?

"A No."

Although Smolens was aware that Beadel and Quandt intended to sell the property, the evidence does not support an inference that Smolens knew they intended to sell the property quickly, or "flip" it, much less that they intended to do so without informing "unsuspecting purchasers such as the Hartzogs" of the problems uncovered during Smolens's repairs at the property. From the evidence before the trial court, one cannot infer Smolens had knowledge that Beadel and Quandt had any intention to fail to make the appropriate disclosures about the property to potential purchasers, or to withhold any evidence regarding the condition of the property from them.

17

In *Casey v. U.S. Bank Nat. Assn.*, *supra*, 127 Cal.App.4th at page 1146, in reviewing an order sustaining a demurrer, the court held: "'In the civil arena, an aider and abettor is called a cotortfeasor. To be held liable as a cotortfeasor, a defendant must have knowledge and intent. . . . A defendant can be held liable as a cotortfeasor on the basis of acting in concert only if he or she knew that a tort had been, or was to be, committed, and acted *with the intent of facilitating the commission of that tort*.' [Citation.] Of course, a defendant can only aid and abet another's tort if the defendant knows what 'that tort' is. As the Supreme Court put it in *Lomita* [*Land and Water Co. v. Robinson* (1908) 154 Cal. 36, 47], the defendant must have acted to aid the primary tortfeasor 'with knowledge of the object to be attained.' [Citation.]"

The Hartzogs cite *Neilson v. Union Bank of California, N.A.* (C.D.Cal. 2003) 290 F.Supp.2d 1101, in support of their argument that they offered sufficient evidence to create a triable issue of material fact as to whether Smolens had knowledge and intent as an aider and abetter in the alleged fraud by Beadel and Quandt. The Hartzogs quote *Neilson* for the following proposition: "Applying this standard, the complaint adequately pleads that defendants had actual knowledge of the primary violation committed by Slatkin. The complaint asserts that the Banks knew Slatkin was committing fraud and was breaching his fiduciary duties to class members. It also alleges that each bank actively participated in Slatkin's Ponzi scheme with knowledge of his crimes. Slatkin's crime, of course, was the operation of a Ponzi scheme that defrauded hundreds of investors and caused losses of hundreds of millions of dollars. The complaint details the manner in which the Ponzi scheme operated, describes Slatkin's fraudulent transactions, and outlines the Banks' involvement in these activities. It alleges, in particular, that the Banks utilized atypical banking procedures to service Slatkin's accounts, raising an inference that they knew of the Ponzi scheme and sought to accommodate it by altering their normal ways of doing business. This supports the general allegations of knowledge." (*Id.* at p. 1120.) We generally agree with *Neilson*'s

18

conclusions, although it is a federal case, applying a different standard of *pleading* fraud claims. We are concerned, however, with a case at the summary judgment stage, when it is the evidence presented, not the facts alleged, that is the focus of our inquiry. *Neilson* does not address what evidence would be sufficient to establish the fraud claim in that case.

Having reviewed the record de novo, we conclude the Hartzogs did not offer evidence that would show the existence of a triable issue of material fact as to Smolens's knowledge and intent to support a claim for aiding and abetting a fraud. While Smolens admitted at his deposition that he knew Beadel and Quandt intended to resell the property, there is no evidence Smolens knew Beadel and Quandt intended to quickly flip the property, much less that he knew they were going to commit a fraud against any prospective purchasers by concealing the property's defects.

Sterling declared Smolens's knowledge of the upcoming fraud, and intent to aid and abet that fraud, might be inferred from his participation in the partial repair of the property's damage and covering up the repairs. We disagree. Sterling's conclusions are speculative, inadmissible, and not sufficient to raise a triable issue of material fact. Contrary to the Hartzogs' contention on appeal, as an appellate court we are not bound to accept and rely on evidence that is clearly inadmissible because the other side has not objected to it. Declarations in support of or in opposition to a motion for summary judgment "shall be made . . . on personal knowledge, shall set forth admissible evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated." (Code Civ. Proc., § 437c, subd. (d); see *Herrera v. Deutsche Bank National Trust Co.* (2011) 196 Cal.App.4th 1366, 1376 [declaration insufficient because not based on personal knowledge and contained inadmissible hearsay]; *Garibay v. Hemmat* (2008) 161 Cal.App.4th 735, 743 [expert witness's declaration insufficient when "'based on assumptions of fact that are without evidentiary support or based on factors that are speculative or conjectural'"].)

19

As noted *ante*, however, Smolens did object to Sterling's declaration, and those objections were preserved. Sterling's statements that Smolens undertook any acts "intentionally" or "knowingly" are clearly conclusory, speculative, and inadmissible. Further, the inferences Sterling drew from the admissible evidence of the work actually performed by Smolens—that Smolens agreed with Beadel and Quandt to conceal the property's serious problems with the knowledge that Beadel and Quandt intended to defraud prospective purchasers—is not reasonable under any scenario. Sterling's declaration extrapolates from Smolens's deposition that Smolens knew Beadel and Quandt would commit fraud, and intended to participate in that fraud. These are, quite simply, too many unreasonable leaps to unsupported conclusions.

The biggest problem with the aiding and abetting theory is revealed in a review and analysis of the expert's declaration. Sterling explained in detail the information that Beadel and Quandt allegedly misrepresented, or failed to disclose, on the required disclosure form when they sold the property to the Hartzogs. This, of course, is the heart of the Hartzogs' claim. Yet, what is completely missing is *any* admissible evidence that Smolens knew Beadel and Quandt would make those misrepresentations and fail to make those disclosures, or that he intended to assist them in so doing. For this reason, even assuming the Hartzogs could amend their complaint to allege a cause of action for aiding and abetting a fraud, such a claim would not survive summary judgment. The trial court did not err in granting Smolens's motion.

V. *CAUSES OF ACTION FOR VIOLATION OF BUSINESS AND PROFESSIONS CODE SECTION 17200 ET SEQ. AND NEGLIGENCE*

The Hartzogs' cause of action for violation of Business and Professions Code section 17200 et seq. is premised entirely on their claim for fraud. Therefore, this cause of action stands or falls on the fraud cause of action.

20

The Hartzogs concede on appeal that the trial court correctly granted the summary judgment motion as to their cause of action for negligence.

DISPOSITION

The judgment is affirmed.  Respondents shall recover costs on appeal.


FYBEL, J.

WE CONCUR:


MOORE, ACTING P. J.


THOMPSON, J.

21